1

2

3

4

5

6

7

8                                    IN THE UNITED STATES DISTRICT COURT

9                                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GENE WOODHAM,

11                 Plaintiff,                         No. CIV S-09-0082 WBS GGH P

12          vs.

13   RN  DATOR, et al.,                               ORDER &

14                 Defendants.                        FINDINGS AND RECOMMENDATIONS

15   _____/

16   <u>Introduction</u>

17                 Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court are: 1) defendants' motion to dismiss, filed on January 19, 2010,

19   brought by defendants Registered Nurse (RN) Dator; RN Stormes; Licensed Vocational Nurse

20   (LVN) R. Cook; Dr. J. Soltanian-Zadeh; Dr. B. Williams to which plaintiff  filed his opposition

21   on February 10, 2010, after which defendants' filed a reply on Feb. 16, 2010; defendant Wohlers[1]

22   filed a notice of joinder in the motion on March 1, 2010; 2) plaintiff's motion to lodge

23   documents, filed on March 9, 2010; and 3) plaintiff's motion for judicial notice, filed on March

24

25          [1]  Although plaintiff spelled this defendant's last name as "Wholer" throughout the
     second amended complaint, defendant Wohlers provides the corrected spelling with his notice of
26   joinder in the motion to dismiss, filed on March 1, 2010.  The court will use the corrected
     spelling.

                                                     1

1  10, 2010.  To the extent that this pro se plaintiff is asking for these filings to be considered as

2  part of his opposition to defendants' motion to dismiss, although belated with respect to each

3  defendant except defendant Wohlers, who joined the motion to dismiss after the motion to

4  dismiss had been briefed, these motions are granted.

5  Complaint

6             Plaintiff's complaint, originally filed on January 12, 2009, proceeds on his

7  verified second amended complaint, filed on April 30, 2009, against six defendants employed at

8  Mule Creek State Prison (MCSP): Registered Nurse (RN) Dator; RN Stormes; RN S. Wohlers;

9  Licensed Vocational Nurse (LVN) R. Cook; Dr. J. Soltanian-Zadeh; Dr. B. Williams.  Second

10 Amended Complaint (SAC), pp. 1-21.  Plaintiff alleges that he is a state prisoner with a disability

11 as defined in the Americans With Disabilities Act of 1990 (42 U.S.C. § 12102), with the specific

12 impairment of a left ankle with fusion with screws, requiring plaintiff's use of a single point cane

13 to walk.  SAC, pp. 1-2.

14             From June 21, 2007, until August 22, 2007, plaintiff saw (non-defendant) Dr.

15 Hashimoto several times for pain plaintiff had associated with a kidney stone and to renew his

16 pain medication, Vicodin, and other medical issues.  SAC, p. 6.  On August 23, 2007, plaintiff, in

17 severe pain due to his kidney stone, received only half the pain medication he was prescribed,

18 even though a day earlier Dr. Hashimoto had renewed the dosage for thirty more days.  Id., at 6-

19 7.  Despite plaintiff's pain, defendant Dator refused to provide any medical care for plaintiff or to

20 review his chart to see plaintiff's medical condition.  Id., at 7.  About three hours after plaintiff

21 saw defendant Dator, he (Dator) called defendant Stormes at the central triage treatment area

22 (TTA) about plaintiff's medical concerns but Stormes told Dator not to send plaintiff there as

23 there was no doctor there and there was nothing wrong with plaintiff.  Id.  Plaintiff told defendant

24 Dator that neither he nor Stormes had done any medical assessment to evaluate plaintiff's

25 medical condition; both defendants denied plaintiff access to a medical doctor and subjected

26 plaintiff to deliberate indifference.  Id., 7-8.

1       On August 24, 2007, an R.N. named Genevice, not a party, pulled plaintiff's

2    chart/unit health record and resolved the medication problem, telling plaintiff that had defendants

3    Dator and Stormes pulled and reviewed plaintiff's chart, they would have seen that Dr.

4    Hashimoto's notes had been erroneously transposed by the pharmacy and plaintiff's pain

5    medication dosage was unchanged.  SAC, p. 8.  Plaintiff began taking his regular pain

6    medication dosage, and was advised to report the actions of Stormes and Dator to their

7    supervisors or to engage in the appeal process.  Id.  When plaintiff, on Aug. 24, 2007, tried to

8    give defendant Dator an inmate appeal complaint concerning Dator's lack of medical care for the

9    informal level of review, defendant Dator refused to take it.  Id.  That same day, plaintiff sent a

10   copy of the inmate appeal Dator had refused with a formal complaint letter (citizen's complaint)

11   about defendants Dator's and Stormes' lack of medical treatment to Warden Subia (not a

12   defendant).  Id., at 9.  Plaintiff alleges that he received no notification until November 30, 2007,

13   regarding the complaint and no action was taken.  SAC, p. 9.  Plaintiff claims the appeal was

14   "'lost under the guise of [being] delayed."  Id.

15       On November 21, 2007, plaintiff underwent a cystourethroscopy  at Doctors

16   Medical Center [Hospital] in Manteca, in which a double "J" stent was placed in plaintiff's penis,

17   running up through the urethra to the left kidney in a procedure to remove a very large kidney

18   stone.  SAC, p. 9.  Defendant Soltanian-Zadeh served as plaintiff's primary care physician at the

19   prison for this procedure.  Plaintiff alleges at one point that Soltanian-Zadeh became his primary

20   care physician on or about June 20, 2007, when Dr. Hashimoto referred plaintiff to an orthopedic

21   doctor for an ankle problem; in another place, he contends he became his primary care physician

22   from about November 30, 2007 through March 12, 2008.  Id. at 6, 10-11.  When on January 17,

23   2008, plaintiff complained to defendants Wohlers and Cook about severe pain and passing a

24   large amount of blood in his urine, defendants Wohlers and Cook refused to see plaintiff in the

25   MCSP Facility C clinic or to allow him access to the TTA to see a doctor there.  Id. at 9.

26       Plaintiff alleges that although defendant Wohlers saw blood in his urine sample,

3

1   she refused plaintiff access to a doctor because she was about to get off her shift, thus subjecting

2   plaintiff to deliberate indifference to his severe pain and passing blood.  SAC, p. 10.  Earlier, on

3   Jan. 14, 2008, defendant Wohlers refused to check plaintiff's vital signs and defendant Cook did

4   not allow plaintiff to see a doctor upon being told not to do so by defendant Wohlers, even

5   though plaintiff told Cook he was in severe pain and defendant Cook saw plaintiff was passing

6   large amounts of blood due to a failed cystourethroscopy.  Id.  When, previously on Jan. 3, 2008,

7   defendant Soltanian-Zadeh interviewed/examined plaintiff regarding the failed

8   cystourethroscopy, this defendant refused to refer plaintiff back out to Manteca for removal of

9   the double J stent that was causing bleeding and other medical problems.  Id.

10           Plaintiff's ankle surgery had been scheduled for Nov. 26, 2007, but he had asked

11   that it be rescheduled due to his excessive bleeding from the stent procedure on Nov. 21, 2007.

12   SAC, p. 10.  At the Jan. 3, 2008 interview, defendant Soltanian-Zadeh granted plaintiff's ADA

13   reasonable modification/accommodation request, appeal log # MCSP-C-03133, in full regarding

14   the failure to have his required ankle surgery after Nov. 26, 2007.  Id., at 11.  Plaintiff told this

15   defendant that a new RFS[2] should be resubmitted so that the surgery could be re-scheduled, but

16   Soltanian-Zadeh refused to do so.  Id.  Plaintiff was prescribed Nurtain for his neuropathic pain.

17   Id.  Defendant Soltanian-Zadeh told plaintiff not to worry about the excessive bleeding and

18   erectile dysfunction plaintiff was experiencing due to the stent.  Id.  Plaintiff contends that this

19   defendant was deliberately indifferent in plaintiff's medical care and treatment from about Nov.

20   30, 2007, through March 12, 2008.  Id.

21           In a March 12, 2008, office medical visit with Soltanian-Zadeh, plaintiff

22   complained of serious pain and requested treatment for the failed cystourethroscopy/double J

23   stent procedure, the remaining kidney stones, excessive bleeding, erectile dysfunction and ankle

24   pain.  SAC, p. 11.  This defendant told plaintiff that he had no pain or residual kidney stones

25

26          [2] Presumably, a form for requesting surgery to be scheduled.

1   regardless of what the Feb. 8, 2008, radiology report indicated and that because plaintiff was

2   doing life, he did not need the use of his penis.  Id.  The erectile dysfunction was caused by the

3   stent that remained in for about four months.  Id.  Plaintiff was told to "deal with it."  Id. at 11-

4   12.  Plaintiff told Soltanian-Zadeh that his actions (or lack thereof) had caused him irreparable

5   injury.  Id. at 12.  Plaintiff alleges that he had filed "paper work" about defendant Soltanian-

6   Zadeh's lack of treatment and that defendant's refusal to provide medical treatment even after his

7   second request for treatment was an act of "reprisal" for plaintiff's complaint filing.  Id.

8          When, on about March 20, 2008, plaintiff received a CDCR custodial counseling

9   chrono 128-A issued by defendant Soltanian-Zadeh concerning the March 12, 2008 office visit,

10  plaintiff filed an administrative appeal and the chrono was overturned.  SAC, p. 12.  On May 5,

11  2008, plaintiff filed a formal complaint against defendant Soltanian-Zadeh with the Medical

12  Board of California; on May 7, 2008, defendant Soltanian-Zadeh re-issued the previously over-

13  turned CDC 128-A custodial counseling chrono, plaintiff again appealed and the second chrono

14  was also overturned.  Id.

15         When plaintiff received medical care from Physician Assistant Karen Todd (not a

16  party), she resolved in about a month plaintiff's remaining kidney stones issue and had the stent

17  removed that defendant Soltanian-Zadeh had not corrected for four months; however, due to

18  complications from the prolonged time the stent remained, which was not medically required,

19  plaintiff's erectile dysfunction became permanent.  SAC, p. 13.  P. A. Todd also took care of

20  rescheduling plaintiff's ankle surgery by submitting an RFS which defendant Soltanian-Zadeh

21  had refused to do.  P.A. Todd's medical treatment he required for his kidney stone and ankle

22  problems.  Id.  Although plaintiff had contacted defendant Williams (and non-party Associate

23  Warden Jackson), on or about February 3, 2008, about the lack of medical care he was receiving

24  from defendant Soltanian-Zadeh, defendant Williams personally failed to act although the issue

25  was before him on several occasions.  Id.  Plaintiff also contacted defendant Williams on June

26  29, 2008, about the lack of medical care for his left ankle but he failed to act although this issue

1    was before him on several occasions as well.  Id. at 15.

2           Plaintiff alleges violations of the Eighth and Fourteenth Amendments by all

3    defendants, seeking compensatory and punitive money damages.  SAC, pp. 15-20.

4    <u>Motion to Dismiss</u>

5           Defendants Williams; Dator; Stormes; Soltanian-Zadeh; and Cook bring their

6    motion to dismiss, pursuant to non-enumerated Fed. R. Civ. P. 12(b), for plaintiff's alleged

7    failure to exhaust administrative remedies and, under Fed. R. Civ. 12(b)(6) for failure to state a

8    claim.  Motion to Dismiss (MTD), pp. 2-13.  Defendant Wohlers later joined the motion.  See

9    Notice of Joinder, pp. 1-3.

10         <u>*Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*</u>

11           In a motion to dismiss for failure to exhaust administrative remedies under non-

12    enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

13    raising and proving the absence of exhaustion."  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir.

14    2003).  The parties may go outside the pleadings, submitting affidavits or declarations under

15    penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

16    record.  <u>Wyatt v. Terhune</u>, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

17    notice by <u>Order</u>, filed on August 31, 2009 (docket # 15).

18           Should defendants submit declarations and/or other documentation demonstrating

19    an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

20    Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

21    complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

22    the court's attention those parts of the complaint upon which plaintiff relies.  If the court

23    determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

24    remedy for non-exhaustion of administrative remedies.  <u>Wyatt v. Terhune</u>, 315 F.3d at 1120.

25         <u>*PLRA Requirements*</u>

26           The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

1   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

2   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

3   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

4   must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

5   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

6   inmates must exhaust administrative remedies, regardless of the relief offered through

7   administrative procedures.  Therefore, inmates seeking money damages must also completely

8   exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

9   seeking money damages are required to exhaust administrative remedies even where the

10  grievance process does not permit awards of money damages).  The United States Supreme Court

11  has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

12  complete the administrative review process in accordance with the applicable procedural rules.

13  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

14  PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

15  be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

16  grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

17  "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

18  requirement "by filing an untimely or otherwise procedurally defective administrative grievance

19  or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382.  Moreover, 42 U.S.C. § 1997e(a)

20  provides that no action shall be brought with respect to prison conditions until such

21  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

22  Cir. 2002).

23            *Administrative Exhaustion Procedure*

24            In order for California prisoners to exhaust administrative remedies, they must

25  proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

26  CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

1  third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

2  985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

3  decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

4           *Discussion*

5           Defendants contend that the CDCR Inmate Appeals Branch (IAB) shows that the

6  IAB received two appeals from plaintiff in 2008 related to medical issues arising at MCSP: (IAB

7  No. 0732832---MCSP No. 08-00974) which was accepted for review at the director's level on

8  June 19, 2008, and canceled on December 17, 2008, as a result of plaintiff's transfer to a

9  different facility, and IAB No. 0733858 (MCSP) 08-00586 accepted for director's level review

10  on May 22, 2008, and denied on September 12, 2008.  MTD, p. 7, Declaration of D. Foston,

11  current Chief of IAB, ¶ 9, Exhibit (Ex) A.  A third appeal, a staff complaint against defendants

12  Dator and Stormes, IAB No. 724511 (MCSP 07-02361), was accepted at the director's level on

13  Feb. 28, 2008, and denied on May 27, 2008.  Id.

14           In his verified second amended complaint, plaintiff states that in IAB No. 724511

15  (MCSP 07-02361), he exhausted his claims of deliberate indifference to plaintiff's medical needs

16  against defendants Dator, Wohlers[3] and Williams on May 27, 2008.  SAC, p. 2.  With regard to

17  defendant Soltanian-Zadeh, plaintiff avers that in IAB No. 800358 (MCSP-08-01250)(see below)

18  and in MCSP -08-00667 (for which he does not provide any IAB, director's level appeal

19  number), plaintiff exhausted his administrative appeal as to his claims against this defendant for

20  deliberate indifference and denial of medical care on July 25, 2008.  SAC, pp. 2-3.  Plaintiff also

21  references the director's level withdrawal of December 17, 2008, for IAB No. 0732832---MCSP

22  No. 08-00974, which exhausted that claim.  Id., at 3.  Plaintiff also references IAB 0733858---

23  MCSP 08-00586,[4] which he claims exhausted his allegations of deliberate indifference to his

24  _____

25           [3] Misspelled, as previously noted, as "Wholer."

26           [4] Plaintiff actually identified the log number of this appeal as MCSP-08-005686, evidently a typographical error.

medical care against defendants Sotanian-Zadeh and Williams.   Id.  Plaintiff claims, in addition, that MCSP-C-03313 was exhausted to the highest level, although he does not provide the IAB number for the appeal or reference its subject matter within the verified amended complaint.  Id. In his opposition, plaintiff refers generically to defendants' exhibits and argues that all of his inmate appeals have been fully exhausted administratively.  Opposition (Opp.), p. 1.  In his supplemental filings, plaintiff includes, inter alia, a copy of third level appeal decision, dated July 15, 2008, IAB no. 0727512 (MCSP-07-03260), which is not referenced by defendants. Plaintiff's motion to lodge documents, pp. 16-17.  However, the subject of this appeal appears to center on a complaint by plaintiff that his permanent mobility impairment does not impact his prison placement and requesting that he be designated permanently medically unassigned.  Id., pp. 16-29.  This does not appear to be sufficiently related to the claims against any of the defendants alleged herein and is thus irrelevant for the purposes of this motion.  Plaintiff provides a copy of the second level appeal response for MCSP-08-00667, wherein plaintiff sought to have withdrawn from his CDC file the March 13, 2008 CDC-128-A custodial counseling chrono defendant Soltanian-Zadeh issued for plaintiff's alleged use of foul language and display of disrespect on a March 12, 2008, office visit.  Id., at 42-43.  This appeal was deemed granted in part and the chrono ordered to be dismissed and removed from plaintiff's CDC central file.  Also included is a copy of plaintiff's May, 2008 grievance, MCSP 08-01250, concerning defendant Soltanian-Zadeh's re-issuance of the chrono with modifications.  Id., at 44-50.  Again, a second-level-response, dated July 3, 2008, indicates that the appeal was granted in part and this second chrono was ordered dismissed and removed from plaintiff's central file.  Id., at 48.  A July 25, 2008 letter from the third level IAB, designates MCSP-08-1250 as IAB No. 0800385 and states that the appeal is being screened out and returned for non-compliance with appeal procedures but also asserts that the second level review is considered the department's final action with respect to CDC Form 128-A custodial chronos.  Although plaintiff asserts that defendant Soltanian-Zadeh's dismissed chronos were an act of "reprisal" or retaliation, the

gravamen of plaintiff's allegations against this defendant is that he violated plaintiff's Eighth

Amendment (not First Amendment) rights by allegedly being deliberately indifferent to

plaintiff's serious medical needs.  Thus, this grievance does not exhaust any issue germane to

plaintiff's second amended complaint with respect to this defendant.  Moreover, plaintiff could

not have proceeded on a retaliation claim against this defendant because any alleged attempted

retaliation was abortive as the chronos were dismissed and removed from plaintiff's central file.

Nor does plaintiff's allegation that he filed numerous complaints against this defendant,

including a complaint to the medical board (see mtn to lodge docs, doc.# 34, p. 67) excuse any

failure to process his claims through the administrative grievance process. Id., at 9.

          As to IAB No. 0733858 (MCSP 08-00586), this appeal was regarding the grant of

his CDC-1824 ADA Appeal Log no. 07-03133 which --- as defendant points out ---

was granted by defendant Soltanian-Zadeh on January 3, 2008 (and signed by an associate

warden on Jan. 7. 2008).  MTD, p. 9; plaintiff's motion to lodge docs., pp. 55-60.  Within the

underlying CDC 1824 request, defendant Soltanian-Zadeh notes, inter alia, that another request

for plaintiff to be re-scheduled for orthopedic surgery (the first scheduled surgery having been

refused by plaintiff because of plaintiff's kidney stone problemt) but that no date had yet been

set.  MTD, Doc. # 23-1, p. 55; plaintiff's motion to lodge docs., at 60.   In MCSP 08-00586,

which plaintiff apparently filed on Feb. 25, 2008, plaintiff complains that no re-scheduled date

for his left ankle surgery had yet been set as of Feb. 5, 2008, although the request was granted on

Jan. 7, 2008.  MTD, Doc. # 23-1; plaintiff's motion to lodge documents, p. at 55.  While plaintiff

seeks to attribute the delay to defendant Soltanian-Zadeh within the allegations of his second

amended complaint, this defendant is correct that no reference within the grievance references

him specifically with respect to the delay.  Within the third level appeal denial decision, the

grievance is framed as a complaint that medical staff at MCSP have failed to provide him with

adequate medical treatment. Id., at 57.  In recounting the second level appeal decision, the Sept.

12, 2008 director's level appeal decision states in part:

1
2
3
4
5
6
7
8

> The reviewer affirms that the appellant submitted a previous appeal regarding this issue that was granted in January 2008.  However, because the appellant refused an appointment on November 26, 2007, the surgeons at Queen of the Valley Hospital in Napa refused to re-see the appellant.  The reviewer affirms that the appellant was informed that the entire process had to begin again starting with getting a referral from the clinic physician for surgery and getting the referral approved.  If the surgery is approved, then another outside location would have to be contacted to conduct the surgery. The reviewer affirms that an orthopedic surgeon has been found who has agreed to see the appellant and he has been scheduled for an appointment.  In that the appellant has been scheduled to see an orthopedic surgeon relative to the pins and screws in his ankle, the reviewer considers the appeal granted in part at the SLR.

9   MTD, Ex. D; Plaintiff's motion to lodge docs., p. 57.  Defendant Soltanian-Zadeh asserts that to

10  the extent that the grievance relates to him at all, it is with regard to his having responded to the

11  MCSP 07-0313 appeal, which, because it implicates the appeal process, is not a legitimate,

12  constitutionally protected claim. MTD, citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

13  MTD, p. 9.  However, this is both a conflation of an argument against plaintiff's claim on the

14  merits with an argument alleging a failure of administrative exhaustion and also misconstrues

15  what plaintiff is actually seeking to implicate this defendant for, the gravamen of which does not

16  focus on this defendant's participation in the appeal process.

17          Plaintiff can be said to have administratively exhausted his claim against

18  defendant Soltanian-Zadeh with regard to a delay in having plaintiff's orthopedic surgery re-

19  scheduled notwithstanding the fact that he granted plaintiff's request to be re-scheduled for

20  surgery because plaintiff appears to be alleging that although defendant Soltanian-Zadeh granted

21  his request to have his ankle surgery re-scheduled, he failed to follow through to initiate or

22  expedite the re-scheduling of the surgery.  In his "discussion of findings" in his interview with

23  plaintiff dated January 3, 2008, defendant Soltanian-Zadeh noted, inter alia, that "[a]nother

24  request has [or had] been sent for IM to be re-scheduled for this surgery, no set date yet."  MTD,

25  Ex. D, p. 70.  Within his second amended complaint, plaintiff alleges as noted above (and

26  somewhat confusingly) that Soltanian-Zadeh became his primary care physician on or about June

20, 2007, when Dr. Hashimoto referred plaintiff to an orthopedic doctor for an ankle problem; in another place, he contends he became his primary care physician from about November 30, 2007 through March 12, 2008. Id. at 6, 10-11.  In either case, this period of time encompasses January 3, 2008.  Thus, even though defendant Soltanian-Zadeh noted that a request for re-scheduled surgery had been sent, he also noted that no date had yet been set and plaintiff, within his allegations, claims that he asked this defendant to re-initiate the process but he refused to do so. The Prison Litigation Reform Act itself does not require that an inmate include the name of the person about whom the prisoner is complaining.  Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922-23 (2007):

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion.

> As has been noted:

> The use of the CDC 602 Inmate/Parolee Appeal Form is required to initiate the administrative grievance process.  See CAL. CODE REGS., tit. 15, § 3084.2.  The CDC 602 Form limits the prisoner to one paragraph, plus one extra sheet, in which they are directed to frame their "problem."  See id. § 3084.2(a)(1). The CDC 602's format suggests that its purpose is to simply provide a mechanism so that the prisoner can describe the facts giving rise to his grievance from his own perspective; it does not require the prisoner to name "defendants" with particularity.  Thus, because the CDCR's own regulations do not require the "naming of names" in the grievance, the Prison Litigation Reform Act cannot impose such a requirement to find proper exhaustion. Jones, 549 U.S. ----, 2007 WL 135890 at * 17.

Deadmon v. Grannis, 2007 WL 433235* 5 (S. D. Cal. 2007).  In addition, "[t]he Ninth Circuit has explained that a California prisoner who correctly completes an appeal form provided by prison officials provides information adequate to exhaust the administrative remedy for claims arising under the Americans with Disabilities Act."  Cassells v. Mehta, 2005 WL 1683881 * 3 (E.D. Cal. 2005), citing Butler v. Adams, 397 F.3d 1181 (9th Cir. 2005).

1          Accepting, as the court must, on a motion to dismiss the truth of plaintiff's

2   allegations, see below, citing Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96

3   S. Ct. 1848, 1850 (1976),[5] that defendant Soltanian-Zadeh was plaintiff's primary care physician,

4   then it would be at least arguably incumbent upon him to properly initiate the process for re-

5   scheduling the surgery and not simply to note, rather vaguely, that such a request was being, or

6   had been, made.  Therefore, the court will find that in seeking to implicate the MCSP medical

7   staff as to this claim that an alleged delay of his ankle surgery constituted deliberate indifference,

8   plaintiff has adequately administratively exhausted this claim as to his apparent primary care

9   physician, defendant Soltanian Zadeh.

10          In IAB No. 0732832---MCSP No. 08-00974, the appeal accepted for review at the

11   director's level on June 19, 2008, and canceled on December 17, 2008, as a result of plaintiff's

12   transfer to a different facility, concerned plaintiff's request for a TENS (Transcutaneous

13   Electrical Nerve Stimulator) unit because of alleged severe nerve damage to his left leg and

14   ankle.  MTD, Doc. # 23-1, Ex. C, pp. 29-41.  He also asserts therein that the pain medication

15   prescribed by defendant Soltanian-Zadeh was insufficient to treat his pain and references the fact

16   that he has yet to see an orthopedic consultant to have the hardware in his ankle removed despite

17   having submitted more than one request.  Id., at 47-48, 53.  Plaintiff contends that this appeal

18   was directed against Soltanian-Zadeh's lack of medical care and that it also demonstrates

19   defendant Williams' active role in covering up the lack of treatment.  Motion for Judicial Notice,

20   Doc. # 35, pp. As noted, the court has already found that plaintiff's claims of inadequate medical

21   care regarding his allegations with regard to delay in receiving orthopedic surgery for his ankle

22   administratively exhausted as to defendant Soltanian-Zadeh and finds that plaintiff with this

23   appeal has shown administrative exhaustion with regard to all of his claims against this defendant

24

25          [5] Facts outside the record may be utilized to rebut the complaint allegations in an
unenumerated 12(b) motion, but in the absence of such facts, the complaint's factual allegations
26   are taken as true.

1   regarding his left ankle.  However, it appears that plaintiff never administratively exhausted his

2   claims within the second amended complaint that defendant Soltanian-Zadeh refused to order

3   plaintiff back to the outside medical provider in Manteca for removal of his stent.[6]  MTD, p. 8.

4   Plaintiff has not shown that any claim with regard to delayed removal of the stent or with respect

5   to any alleged medical condition involving plaintiff's kidney stones or erectile dysfunction has

6   been administratively exhausted and his claims that he has been subjected to deliberate

7   indifference with regard to these conditions should be dismissed as unexhausted.

8       The staff complaint against defendants Dator and Stormes, IAB No. 724511

9   (MCSP 07-02361), was accepted at the director's level on Feb. 28, 2008, and denied on May 27,

10   2008, and plaintiff administratively exhausted his claims as to these defendants with regard to his

11   allegation that on August 23, 2007, his Vicodin was reduced and that defendants Dator and

12   Stormes refused to send plaintiff to the triage treatment area (TTA) to see a doctor, nor were his

13   vital signs taken to determine the level of plaintiff's pain.  MTD, Ex. B.

14       Defendants do not argue that plaintiff failed to exhaust his administrative

15   remedies as to defendants Dator and Stormes, but do aver that plaintiff failed to exhaust his

16   claims against defendant Williams, MCSP Health Care Manager and Chief Medical Officer.

17   MTD, pp. 7-8, 10-11.  Defendant Williams states that plaintiff has alleged that he complained to

18   defendant Williams about the conduct of Dator and Stormes on August 23, 2007, and that he

19   complained in February and June 2008, about the lack of medical care he was receiving for his

20   ankle.  MTD, p. 10.  Defendant Williams argues, however, that nowhere does plaintiff reference

21   him in any way in any of his appeals.  Id., at 11.  Defendant Williams notes that two of the

22   second-level responses to plaintiff's medically related appeals, MCSP-07-2361, concerning the

23   allegations regarding Dator and Stormes, and MCSP-08-00974, concerning plaintiff's request for

24   a TENS unit, were provided by Williams.  MTD, p. 11, Doc. # 23-1, pp. 21-22, 40-41.  On that

25

26       [6] Spelled by defendants as "stint."

14

basis, defendant Williams argues that a prison official cannot use a prison official's actions in

reviewing a grievance as a basis for § 1983 liability, citing <u>Buckley v. Barlow</u>, 997 F.2d at 495.

and contends that his actions in reviewing the grievance, wherein plaintiff does not reference him

in any way, cannot serve as a basis for § 1983 liability.  MTD, p. 11.  As noted before with

defendant Soltanian-Zadeh, this is an argument that tangles a challenge to the merits of the claim

with a contention of a lack of administrative exhaustion.   Whether plaintiff fails to state a claim

with regard to this defendant is therefore addressed below.  On the principle that plaintiff need

not have expressly named each individual he seeks to implicate in his claims of deliberate

indifference to his medical care, the court finds that his claims against this defendant are

exhausted, at least with respect to the subjects of the two grievances to which this defendant, the

Chief Medical Officer, provided second-level responses.

       As to defendants Cook and Wohlers, these defendants maintain that none of

plaintiff's appeals speak to his claims against them regarding his allegations that despite his

passing a large amount of blood in his urine and being in severe pain, they refused to refer

plaintiff to a medical doctor.  MTD, p. 8, Foston Dec., Exs. A-D and Defendant Wohlers' Notice

of Joinder, p.2.  This court's review of both defendants' and plaintiff's exhibits essentially

substantiates this contention.  Although not noted within the argument of the motion to dismiss,

in his third level appeal of MCSP 07-2361, the grievance he filed with respect to the specific

conduct of defendants Dator and Stormes on Aug. 23, 2007, plaintiff for the first time within that

appeal adds the names of defendants Wohlers and Cook on a claim of deliberate indifference to

his medical needs.  See, e.g., MTD, Doc. # 23-1, p. 34; plaintiff's Doc. # 34, p. 8, Doc. # 35, p.2.

Plaintiff did not reference these individuals earlier in the process of this appeal and it is clear by

the manner in which the third level appeal response is framed that any such apparently belatedly

piggy-backed claim was not addressed.  The court finds that plaintiff's allegations against these

defendants Cook and Wohlers should be dismissed as administratively unexhausted.

\\\\\\

1    *Legal Standard for Fed. R, Civ. 12(b)(6) Motion*

2            In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

3    a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

4    it must contain factual allegations sufficient to "raise a right to relief above the speculative

5    level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The

6    pleading must contain something more...than...a statement of facts that merely creates a suspicion

7    [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

8    and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual

9    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

10   ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

11   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

13           In considering a motion to dismiss, the court must accept as true the allegations of

14   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

15   Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

16   motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421,

17   89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume

18   that general allegations embrace those specific facts that are necessary to support the claim.'"

19   National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

20   (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

21   Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

22   Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

23           The court may consider facts established by exhibits attached to the complaint.

24   Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also

25   consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

26   1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

1  papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir.

2  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

3  <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

4         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

5  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  <u>See</u>

6  <u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448 (9th Cir. 1987).

7                                    *Discussion*

8          Defendants Dator, Stormes and Williams argue that plaintiff has failed to state a

9  claim under the Eighth Amendment as to each of them.  MTD, pp. 11-12.  Defendants premise

10  their argument on behalf of defendants Dator and Stormes on the fact that the error in the dosage

11  of the Vicodin plaintiff was provided was corrected the next day.

12         In his opposition, plaintiff argues that the court has pre-screened and re-screened

13  his complaint and first amended complaint and has found his claims colorable.  Opp., p. 5.

14                         *Inadequate Medical Care Standard*

15         In order to state a § 1983 claim for violation of the Eighth Amendment based on

16  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

17  deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct.

18  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

19  serious, and that defendants possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>,

20  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir.

21  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

22  <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

23         A serious medical need exists if the failure to treat a prisoner's condition could

24  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

25  that a prisoner has a serious need for medical treatment are the following:  the existence of an

26  injury that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at 1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837, 114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  But a physician need not fail to treat an inmate altogether

1   in order to violate that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d

2   1312, 1314 (9th Cir. 1989).  A failure to <u>competently</u> treat a serious medical condition, even if

3   some treatment is prescribed, may constitute deliberate indifference in a particular case.  <u>Id.</u>

4          Additionally, mere delay in medical treatment without more is insufficient to state

5   a claim of deliberate medical indifference.  <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766

6   F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

7   no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing

8   <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-

9   1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

10  to provide additional support for a claim of deliberate indifference; however, it does not end the

11  inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

12  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

13  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

14  the defendant." <u>McGuckin</u>, 974 F.2d at 1061.

15         Taking as true the allegation that although plaintiff was in severe pain, defendants

16  Dator and Stormes failed to provide him adequate medical treatment, including failing to provide

17  him access to the TTA and failing to provide him the proper dosage of Vicodin, an error that has

18  been conceded, and an error that was easily rectified the next day by someone who took the time

19  to pull plaintiff's health record, the court does not find that plaintiff has failed to state a colorable

20  Eighth Amendment claim as to these defendants and the motion to dismiss should be denied on

21  this ground.

22         As to defendant Williams, although this defendant's name is included in the

23  heading of the discussion as being one for whom plaintiff has failed to make a colorable Eighth

24  Amendment claim, no substantive argument is provided in that section on behalf of this

25  defendant as to why this is so.  This defendant is not even referenced within that argument.

26  However, as noted, defendant Williams contends (in the section regarding administrative

exhaustion) that a prison official cannot use a prison official's actions in reviewing a grievance as a basis for §1983 liability, citing <u>Buckley v. Barlow</u>, 997 F.2d at 495, arguing that his actions in reviewing the grievance cannot serve as a basis for § 1983 liability.  MTD, p. 11.  Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations.  <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991); <u>Hansen v. Black</u>, 885 F.2d 642 (9th Cir. 1989); <u>Taylor v. List</u>, 880 F.2d 1040 (9th Cir. 1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' <u>Imbler v. Pachtman</u>, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  <u>Martinez v. State of California</u>, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980).  "Without proximate cause, there is no § 1983 liability."  <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance with this constitutionally valid strip search policy, was subsequently ratified by the School Board when Mr. Williams filed a grievance. Therefore, Williams' only grasp at evoking municipal liability under § 1983 is to show that this subsequent ratification is sufficient to establish the necessary causation requirements.  Based on the facts, the Board believed Ellington and his colleagues were justified in conducting the search of Williams.  There was no history that the policy had been repeatedly or even sporadically misapplied by school board officials in the past. Consequently, the School Board cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the "moving force" behind the alleged constitutional deprivation.

<u>Williams v. Ellington</u>, 936 F.2d 881, 884-885 (9th Cir. 1991).

This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification theory.  However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made can never be liable under a ratification theory.  If, for example, a

reviewing official's rejections of administrative grievances can be construed as an automatic

whitewash, which may have led other prison officials to have no concern of ever being

reprimanded, a ratifying official may be liable for having put a defective policy in place.   In both

instances wherein defendant Williams provided the second-level appeal responses, they were

both partially granted although plaintiff nevertheless was dissatisfied and continued to the third

level of appeal.  Even taking plaintiff's allegations as true that this defendant had been made

aware both through the grievance process and through other forms of contact of plaintiff's

allegations of delayed and inadequate medical care, the court finds such insufficient to constitute

any meaningful causation of plaintiff's injuries and the motion as to defendant Williams on this

ground should be granted.

Accordingly, IT IS ORDERED that:

1.  Plaintiff's motion to lodge documents, filed on March 9, 2010 (docket # 34)

and plaintiff's motion for judicial notice, filed on March 10, 2010 (docket # 35), is construed as

requests by this pro se plaintiff for these filings/exhibits to be considered in opposition to

defendants' motion to dismiss, and as so construed – although belated with respect to every

defendant except defendant Wohlers whose joinder in the motion to dismiss occurred after the

motion had been otherwise briefed – are granted.

2.  The Clerk of the Court is directed to correct the spelling of the last name of

defendant "Wholer" to "Wohlers" in the docket of this case.

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss, filed on

January 19, 2010 (docket # 23) be granted in part and denied in part:

a) Granted as to defendant Soltanian-Zadeh on plaintiff's claims regarding his

stent and kidney-related claims and these claims be dismissed as administratively unexhausted;

b) Denied as to plaintiff's claims of inadequate medical care against defendant

Soltanian-Zadeh regarding plaintiff's left ankle condition;

c) Granted as to defendants Cook and Wohlers and the claims against these

1  defendants be dismissed as not exhausted administratively;

2         d) Denied as to plaintiff's claims of deliberate indifference to plaintiff's medical

3  needs on August 23, 2007, alleged against defendants Dator and Stormes;

4         e)  Granted as to defendant Williams.

5         These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

7  days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within fourteen days after service of the objections.  The parties are

11  advised that failure to file objections within the specified time may waive the right to appeal the

12  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: 07/29/2010

                                        /s/ Gregory G. Hollows

14                                        _____

15                                        GREGORY G. HOLLOWS
                                        UNITED STATES MAGISTRATE JUDGE

16  GGH:009
    wood0082.mtd

17

18

19

20

21

22

23

24

25

26

22